# EXHIBIT A

*United States v. Robert Neal Hatfield*, No. 5:17-cv-00121 (W.D.N.C.)

**SETTLEMENT AGREEMENT
between
THE UNITED STATES OF AMERICA
and
ROBERT NEAL HATFIELD**

## I. INTRODUCTION

1. This Settlement Agreement ("Agreement") is made and entered into by and between the United States of America, through the United States Department of Justice ("United States") and its authorized representatives, and Robert Neal Hatfield ("Defendant") (collectively, "the Parties").

## II. RECITALS

2. This Settlement Agreement arises out of a Complaint filed by the United States on July 13, 2017, captioned United States v. Robert Neal Hatfield, No. 5:17-cv-00121 (W.D.N.C.) (the "Civil Action"), to enforce Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3631 ("the Fair Housing Act" or "FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691e ("ECOA").

3. In the Civil Action, the United States alleges, and the Defendant denies, that between 2004 and the filing of the Complaint, the Defendant subjected female credit applicants and actual and prospective female tenants or purchasers of the subject properties to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such alleged conduct includes, but is not limited to:

   a. Making unwelcome sexual comments and unwelcome sexual advances to actual and prospective female tenants or purchasers or credit applicants;

b. Groping or otherwise touching actual and prospective female tenants or purchasers or credit applicants on their breasts and bodies without their consent;

c. Offering to reduce or eliminate down payments, or offering to overlook or excuse late or unpaid rent or loan obligations in exchange for sexual favors; and

d. Taking adverse housing actions, or threatening to take such actions, against female purchasers or credit applicants who have objected to his unwelcome sexual harassment or to granting sexual favors.

4. The United States alleges, and the Defendant denies, that the Defendant's discriminatory conduct has injured actual and prospective female tenants, purchasers, or credit applicants, and persons associated with them. Those actual and prospective female tenants, purchasers, or credit applicants are all persons within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(d), and applicants within the meaning of ECOA, 15 U.S.C. § 1691a(b), and Reg. B, 12 C.F.R. § 1002.2(e), and have suffered damages.

5. By the actions and statements described above, the United States alleges, and the Defendant denies, that the Defendant violated the Fair Housing Act, 42 U.S.C. §§ 3604(b)-(c), 3605, 3617, and ECOA, 15 U.S.C. § 1691(a).

6. The United States further alleges, and the Defendant denies, that the Defendant engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act and ECOA, in violation of 42 U.S.C. § 3614(a) and 15 U.S.C. § 1691e(h). The United States also alleges, and the Defendant denies, that the Defendant denied to a group of persons rights granted by the Fair Housing Act, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

7. This Agreement shall not be construed to be an admission of wrongdoing or an admission of liability by the Defendant.

8. For purposes of this Agreement, the Defendant represents and affirms that he no longer has any direct or indirect management, ownership, financial, credit, or control interest, including any interest arising from a deed of trust or other debt security interest, in any residential property other than his primary residence and the property identified in Paragraph 13, infra.

### III. STATEMENT OF CONSIDERATION

9. The Parties agree that the claims against the Defendant should be resolved amicably, without further proceedings or a trial. Therefore, the United States and the Defendant agree to the entry of this Settlement Agreement. This Agreement constitutes full resolution of the claims in the United States' Complaint in this case against the Defendant.

10. In consideration of, and consistent with, the terms of this Agreement and the promises made by the Parties herein, the Parties will move jointly for dismissal of the Civil Action with prejudice, consistent with the terms set forth in Paragraphs 27-33, infra. The Parties agree and acknowledge that this consideration is adequate and sufficient.

THEREFORE, the Parties, through their authorized representatives, hereby further stipulate and agree as follows:

### IV. GENERAL NONDISCRIMINATION PROVISIONS

11. The Defendant, his officers, employees, agents, successors and assigns, and all other persons or entities in active concert or participation with the Defendant, shall not:

a. Discriminate against any person in the terms, conditions or privileges of the rental or sale of a dwelling unit, or in the provision of services or facilities in connection therewith, because of sex;

b. Make, print, publish, or cause to be made any notice, statement or advertisement with respect to the rental or sale of a dwelling unit that states any preference, limitation, or discrimination based on sex;

c. Discriminate against any person in the terms or conditions of residential real estate-related transactions, because of sex; or

d. Coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the Fair Housing Act; or

e. Discriminate against any applicants or purchasers with respect to credit transactions, on the basis of sex, in violation of ECOA.

V. **DEFENDANT'S ACQUISITION OR TRANSFER OF INTEREST IN SUBJECT PROPERTIES**

12. If, within 5 years of the Effective Date of this agreement, the Defendant acquires a direct or indirect management, ownership, financial, credit, or control interest in any other residential property, rental or otherwise, such property shall be considered a Subject Property and shall become subject to the applicable provisions of this Agreement. Within thirty (30) days of acquiring such an interest, the Defendant shall notify counsel for the United States of the nature of his interest in the dwelling or property; the address of the property; the number of individual dwelling units at the property; and any other information required under the

Agreement. The Defendant shall further provide a copy of the documents memorializing the transfer in interest.

13. Prior to, or within 180 days of, the Effective Date of this agreement, the Defendant shall sell or transfer the rental property located at 213 West Henderson Street, North Wilkesboro, NC 28697 ("the Henderson Property"), to Robin Gail Hatfield. The Defendant will have no interest in the Henderson Property following the transfer, and will play no role managing the property, pursuant to Paragraph 14, infra. If the Defendant is unable to sell or transfer the Henderson Property, it shall be considered a Subject Property and shall become subject to the applicable provisions of this Agreement for a period of 5 years from the Effective Date of this Agreement.

### VI. PROVISIONS REGARDING THE FUTURE PARTICIPATION OF THE DEFENDANT IN RENTAL HOUSING

14. The Defendant shall be permanently prohibited from directly or indirectly performing any Property Management Responsibilities[1] at any residential rental or sale property.

15. Between the Effective Date of this Agreement and the date of sale or transfer of the Henderson Property, a third party will perform all property management duties, as described in Paragraph 14 n.1, supra, with respect to that property. The Parties agree that Robin Gail Hatfield may perform these functions.

---

[1] As used in this Agreement, "Property Management Responsibilities" include showing or renting housing units; processing rental applications; supervising or performing repairs or maintenance; setting rents, security deposits, and down payments; determining resident eligibility for subsidies or waivers of fees, rent, and other payments; determining whom to rent or sell to, whom to evict, and/or whose lease to renew or not renew; inspecting housing units; collecting rent, fees, and other payments; entering housing units; overseeing any aspects of the rental or sale process; or engaging in any other property-related activities that involve, or may involve, personal contact with residents or prospective residents.

16. If the Defendant is unable to sell or transfer the Henderson Property, or if he acquires an interest as described in Paragraph 12, supra, in any other residential rental or sale property, the Defendant will remain jointly and severally liable for any violation of this Agreement. Additionally, the following provisions will apply with respect to any such property:

   a. Within no more than 15 days of the expiration of the 180-day period described in Paragraph 13, supra, or of the acquisition of any interest in any other residential rental or sale property, the Defendant shall retain an Independent Property Manager, approved in writing by the United States, to perform all Property Management Responsibilities at the Subject Properties. An "Independent Property Manager" is an individual or entity that is experienced in managing residential rental properties and who has no current or past employment, financial, contractual, personal, or familial relationship with the Defendant. If, after retaining an Independent Property Manager, the Defendant wishes to change the Independent Property Manager, he shall submit the name of the new manager, in writing, to the United States for approval at least five (5) days prior to engaging the individual or entity.

   b. The Defendant shall, through the Independent Property Manager, implement, subject to the United States' approval, a written policy against sexual harassment, including a formal complaint procedure. A copy of this policy and procedure shall be provided to counsel for the United States simultaneously with the Defendant's identification to the United States of the proposed Independent Property Manager. This policy and procedure shall be implemented within fifteen (15) days after the United States indicates that the

6

policy and procedure are satisfactory to the United States, and at that time the Independent Property Manager shall notify all new and current tenants and purchasers of the policy and procedure.

a. The Defendant shall ensure that all of the Independent Property Manager's employees who will be performing any duties in relation to the current or future properties are familiar with the requirements of the Fair Housing Act and ECOA, particularly as they pertain to sex discrimination and sexual harassment.

b. The Defendant shall, through the Independent Property Manager, post an "Equal Housing Opportunity" sign in any rental or sales office through which the current or future properties are rented or sold, which indicates that all apartments are available for rent on a nondiscriminatory basis. An 11-inch-by-14-inch poster that comports with 24 C.F.R. Part 110 will satisfy this requirement. Such poster shall be placed in a prominent, well-lit location in which it is easily readable. The Defendant may use HUD Form 928, copies of which are available free of charge by calling HUD directly at 800-669-9777 or online at https://portal.hud.gov/hudportal/documents/huddoc?id=928.1.pdf.

c. The Defendant shall require that all advertising conducted for any of the current or future properties in newspapers, telephone directories, radio, television or other media, and all billboards, signs (including at the entrance to the property), pamphlets, brochures, and other promotional literature, include either a fair housing logo, the words "equal housing opportunity provider," and/or the following sentence: "We are an equal opportunity housing

provider. We do not discriminate on the basis of race, color, national origin, religion, sex, familial status, or disability." The words or logo should be legible and prominently placed.

d. The Defendant shall send to the United States within thirty (30) days after the effective date of this Agreement and annually thereafter, a list of all tenants and purchasers at the current or future properties and their telephone numbers.

e. The Defendant shall maintain all rental and sales records kept in relation to the rental or sale of current and future properties, and allow the United States to inspect and copy all such records upon reasonable notice.

f. The Defendant shall provide any information reasonably related to compliance with this Agreement that is requested by the United States.

## VII. PROVISIONS REGARDING THE FUTURE PARTICIPATION OF THE DEFENDANT IN CREDIT TRANSACTIONS

17. The Defendant shall be permanently prohibited from directly or indirectly performing any Credit Transaction Responsibilities[2] with regard to any residential property.

## VIII. CONTACT WITH AGGRIEVED PERSONS

18. The Defendant shall be prohibited from purposefully or knowingly initiating contact or communications, either directly or indirectly, with any person identified as an aggrieved person by the United States in this litigation, including the individuals listed in

---

[2] As used in this Agreement, "Credit Transaction Responsibilities" include: soliciting credit applications; researching and evaluating a credit applicant's creditworthiness; approving or rejecting credit applicants; executing credit agreements; setting loan payments and security deposits; determining whom to extend credit to and whom to foreclose against; collecting loan payments and fees; overseeing any aspects of the credit transaction process; or engaging in any other credit-related activities that involve, or may involve, personal contact with purchasers or applicants.

8

Appendix A. "Contact or communications" includes, but is not limited to, physical contact, verbal contact, telephone calls, e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communication with the protected person(s) through third parties.

19. In the event the Defendant inadvertently or unintentionally initiates any contact with any aggrieved person, he shall immediately discontinue the contact or communication and shall take all reasonable steps to avoid any further contact or communication and shall immediately notify the United States of such contact.

## IX. PAYMENT TO AGGRIEVED PERSONS

20. Within ten (10) days after the Effective Date of this Agreement, the Defendant shall deposit in an interest-bearing escrow account the total sum of FIVE HUNDRED FIFTY THOUSAND DOLLARS ($550,000) for the purpose of resolving the claims of the aggrieved persons identified in Appendix A (hereinafter "aggrieved persons"). This money shall be referred to as "the Settlement Fund." In addition, within fifteen (15) days of the establishment of the Settlement Fund, the Defendant shall submit proof to the United States that the account has been established and the funds deposited.

21. Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth herein.

22. The Defendant shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraph 20, supra.

23. The United States shall determine an appropriate amount of damages that should be paid to each aggrieved person and shall inform the Defendant of its determination in writing. In its letter informing the Defendant of its determination, the United States shall inform the

9

Case 5:17-cv-00016-MOC-DSC   Document 62-1   Filed 04/25/19   Page 10 of 18

Defendant of the amounts (plus accrued interest) that should be paid pursuant to its determination. The Defendant shall, within ten (10) days of the receipt of the United States' determination, deliver to counsel for the United States, by overnight delivery, a separate check payable to each aggrieved person in the amounts determined. The Defendant agrees as part of this Agreement that he will not seek to interfere with or oppose the United States' determinations regarding the amount of money to be distributed to each aggrieved person.

24. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund plus accrued interest.

25. When counsel for the United States has received a check from the Defendant payable to an aggrieved person and a signed release in the form of Appendix B from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and the original, signed release to counsel for the Defendant. No aggrieved person shall be paid until she has executed and delivered to counsel for the United States the release at Appendix B.

## X. CIVIL PENALTY

26. Within TEN (10) days after the Effective Date of this Agreement, the Defendant shall make a payment of FIFTY THOUSAND DOLLARS ($50,000) to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C); 28 C.F.R. 85.5. This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

## XI. IMPLEMENTATION, ENFORCEMENT, AND DISMISSAL OF UNDERLYING ACTION

27. After the Defendant has made the payments described in Paragraphs 20 and 26, the Parties agree to file the signed Agreement with the United States District Court for the Western District of North Carolina. The Parties' joint motion shall request that the Court enter

an order pursuant to Federal Rule of Civil Procedure 41(a)(2), dismissing the complaint in this action with prejudice, while retaining jurisdiction to enforce the Agreement for a period of five years from the Effective Date. The joint motion shall further request that the Court's order state that the parties shall comply with the terms of the Agreement, a copy of which shall be attached to the motion.

28. The Parties stipulate that the Court has personal jurisdiction over the Defendant for the purposes of this action, and subject matter jurisdiction over the United States' claims resolved by this Agreement under 28 U.S.C. § 1345, 42 U.S.C. § 3614(a), and 15 U.S.C. § 1691e(h).

29. The United States may review compliance with this Agreement at any time. The Defendant agrees to cooperate with the United States in any review of compliance with this Agreement. Upon reasonable notice, the Defendant shall permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Agreement.

30. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of or compliance with this Agreement prior to initiating court action. If the United States believes that the Defendant has failed to perform in a timely manner any act required by this Agreement, or has otherwise not acted in conformance with any provision thereof, whether intentionally or not, the United States will notify the Defendant in writing of its concerns.[3] The Defendant will have 30 days from the date of mailing to cure the breach.

31. If the Parties are unable to reach a resolution within 30 days, the United States may move the Court to enforce this Agreement. The United States may seek any or all of the

---

[3] Notice shall be sent to: Ryan D. Bolick, Cranfill Sumner & Hartzog LLP, 2907 Providence Road, Suite 200, Charlotte, NC 28211

following: 1) an order mandating specific performance of any term or provision in this Agreement, without regard to whether monetary relief would be adequate; 2) an award of reasonable attorneys' fees and costs incurred in bringing an action or proceeding to remedy breach of this Agreement; and 3) any additional relief that may be authorized by law or equity.

32. This Agreement is enforceable only by and against the Parties.

33. Failure by the United States to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

## XII. TERMINATION OF LITIGATION HOLD

34. The Parties agree that, as of the Effective Date of this Agreement, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any of the Parties of any other obligations imposed by this Agreement.

## XIII. DURATION, EXECUTION AND OTHER TERMS

35. The Effective Date of the Agreement is the date of the signature of the final signatory to the Agreement. The term of the Agreement is five years from the Effective Date.

36. The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

37. Except as stated in Paragraph 31, supra, each Party shall bear its own legal or other costs incurred in connection with this matter, including the preparation, negotiation, and performance of this Agreement.

38. This Agreement, including Appendices A-B, constitutes the complete agreement between the parties relating to the claims made in the Complaint. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

39. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion. The Parties agree that each Party and its representatives have acted consistent with the duty of good faith and fair dealing.

40. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

41. The provisions of this Agreement shall apply to the Defendant and his officers, employees, agents, and all other persons or entities in active concert or participation with him.

42. This Agreement is governed by and shall be interpreted under the laws of the State of North Carolina. For purposes of construing or interpreting this Agreement, it shall be deemed to have been drafted by all Parties and shall not be construed or interpreted against any Party for that reason in any subsequent dispute.

43. Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another party, the performance of one party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another party.

13

Case 5:17-cv-00016-MOC-DSC   Document 62-1   Filed 04/25/19   Page 14 of 18

44. This Agreement may be modified only with the written, signed consent of the Parties or by motion to the Court. Other than extension of time limits for performance, any agreed-upon modification is effective upon filing the written agreement with the Court. Such modification shall remain in effect for the duration of the Agreement or until such time as the Court indicates through written order that it has not approved the modification.

45. This Agreement is a public document. The parties agree and consent to the United States' disclosure to the public of this Agreement.

**For Plaintiff United States of America:**

Dated: April 12, 2019

R. ANDREW MURRAY
United States Attorney
Western District of North Carolina

KATHERINE T. ARMSTRONG
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street
Suite 1650
Charlotte, NC 28202
Phone: (704) 338-3104
Fax: (704) 344-6629
Email: Katherine.Armstrong@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General

SAMEENA SHINA MAJEED
Chief

MICHAEL S. MAURER
Deputy Chief
AMIE S. MURPHY
CHRISTOPHER D. BELEN
COLIN STROUD
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwest Building, 7th Floor
Washington, DC 20530
Phone: (202) 514-4737
Fax: (202) 514-1116
E-mail: Colin.Stroud@usdoj.gov

**For Defendant:**

Dated: 4-12-19 , 2019

*signature*

ROBERT NEAL HATFIELD
Defendant

*Counsel for the Defendant*:

RYAN D. BOLICK
VIRGINIA WOOTEN
CRANFILL SUMNER & HARTZOG LLP
2907 Providence Road
Suite 200
Charlotte, NC 28211
Phone: (704) 940-3416
E-mail: RBolick@cshlaw.com

## **Appendix A**

1. Cynthia Bochette
2. Diana Bumgarner
3. Susan Church
4. Jessica Craig
5. Gaira Cruz
6. December Dobson
7. Tawana Dobson
8. Kathy Garnes
9. Frances Harris
10. Ruth Heckman
11. Rebecca Lovette
12. Sharon Parks
13. Amanda Potter
14. Tammi Roberts
15. Sheila Rodriguez
16. Rose Shive
17. Pamla Spicer

**Appendix B**

**FULL AND FINAL RELEASE OF CLAIMS**

In consideration for the parties' agreement to the terms of the Settlement Agreement entered into in the case of <u>United States</u> v. <u>Robert Hatfield</u> 5:17-cv-00121 (W.D.N.C.), in the United States District Court for the Western District of North Carolina, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge the Defendant named in this lawsuit, as well as his insurers, attorneys, agents, employees, former employees, heirs, and executors from any and all claims arising out of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3631 ("the Fair Housing Act" or "FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691e ("ECOA") which were set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have had against Robert Hatfield for any of his actions or statements related to those claims through the date of the entry of the Settlement Agreement.

Executed this \_\_\_\_\_ day of _____, 201\_.

_____

Signature

_____

Print Name

_____

Home Address

_____

Home Address Continued